UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. EQUAL EMPLOYMENT          :
OPPORTUNITY COMMISSION,        :
                              :
       Plaintiff,              :
                              :
                              :
JENNIE LUMBRA,                 :
                              :
       Plaintiff-Intervenor,   :
                              :
                              :
STATE OF VERMONT,              :
                              :
       Plaintiff-Intervenor,   :
                              :
           v.                  :     Case No. 2:21-cv-99-wks
                              :
COUGHLIN, INC.,                :
                              :
       Defendant.              :
                              :

## OPINION AND ORDER

Pending before the Court are two motions for entry of a protective order, one filed by Defendant Coughlin, Inc. ("Coughlin") (ECF No. 55) and one filed by Plaintiff United States Equal Employment Opportunity Commission ("EEOC") (ECF No. 57). Following a hearing to compel discovery responses and production on March 14, 2022, the Court ordered the parties to submit a proposed protective order (ECF No. 49).[1] Both parties

---

[1] Defendant informed the Court that McDonald's Corporation has taken the position that the franchise agreement between it and Defendant contains "trade secrets and confidential business

agreed to try, in good faith, to negotiate a proposed protective order. While the parties have agreed on a number of provisions, three outstanding disputes remain: (1) the definition of "confidential information"; (2) the scope of the protective order, specifically whether the order would apply to publicly-filed judicial documents and the time frame in which the order's restrictions would be in effect; (3) and whether documents considered confidential can be destroyed at the conclusion of the case. For the reasons set forth below, Defendant's Motion to Enter its Proposed Order is granted in part and denied in part and Plaintiff's Motion for Protective Order is also granted in part and denied in part. Furthermore, Plaintiff's request for a hearing on this issue is denied as moot.

Also before the Court is Plaintiff's Leave to File a Memorandum Following Oral Argument (ECF No. 50) and Defendant's opposition to that request (ECF No. 54). The Court heard the parties on Plaintiff's Motion to Substitute Party (ECF No. 36) at the March 14 hearing. Following that hearing, Plaintiff requested that the Court consider its additional arguments. The Court has decided to consider Plaintiff's additional arguments. As such, Plaintiff's Leave to File a Memorandum Following Oral Argument (ECF No. 50) is granted and Defendant's motion in

---

information." ECF No. 45 at 14. Defendant proposed a protective order to accommodate those concerns.

opposition to Plaintiff's additional briefing is denied (ECF No. 54). In considering Plaintiff's additional arguments, the parties' briefings, and issues raised at oral argument, for the reasons set forth below, the Court grants Plaintiff's Motion to Substitute Party (ECF No. 36) for its state law claim and its compensatory damages claim under federal law. The Court, however, dismisses Plaintiff's claim for punitive damages and declaratory relief under federal law.

## Factual Background

This case involves Plaintiff and Plaintiff Intervenors' allegation that Defendant subjected a class of employees to a sexually hostile work environment between 2014 and 2019 in violation of 703(a)(l) of Title VII, 42 U.S.C. § 2000e-2(a)(l) and the Vermont Fair Employment Practices Act ("VFEPA"). Defendant owns and operates ten franchised McDonald's stores in Vermont and New Hampshire and employs and has employed a number of people at those restaurants, including former Second Assistant Manager Peter Pratt. The events in this case allegedly occurred at Defendant's McDonald's restaurant in Randolph, Vermont. Specifically, Plaintiff and Plaintiffs-Intervenors (collectively "Plaintiffs") allege that Mr. Pratt regularly made unwelcome sexual remarks and comments; at times engaged in unwanted physical contact; and that Defendant ignored complaints about Mr. Pratt's behavior and subjected Plaintiff-Intervenor

Jennie Lumbra and a class of similarly aggrieved employees to a
sexually hostile work environment. Plaintiffs also allege that
Defendant retaliated against Ms. Lumbra for submitting
complaints about Mr. Pratt's conduct. Defendant counters that it
"exercised reasonable care to prevent, and promptly
investigate[d] and correct[ed] any alleged discriminatory,
retaliatory, or harassing behavior." *See* ECF No. 9 at 8.

This case is brought by the EEOC on behalf of the class of
aggrieved employees. The case is also brought by Plaintiff-
Intervenor Jennie Lumbra[2] and Plaintiff-Intervenor State of
Vermont. Plaintiff EEOC seeks a permanent injunction to enjoin
Defendant from engaging in discriminatory employment practices
on the basis of sex or retaliating for complaints based on those
practices, and to order Defendant to implement policies which
provide equal employment opportunities. The EEOC also seeks
appropriate backpay; compensation for past and future pecuniary
losses; punitive damages to compensate the aggrieved individuals
for the alleged unlawful employment practices; the costs of this
litigation; and any other relief the Court deems necessary and
proper. Ms. Lumbra (now Ms. Lumbra's estate) seeks declaratory
relief that Defendant's actions were unlawful; compensatory

---

[2] Ms. Lumbra died unexpectedly on November 8, 2021. Plaintiff
then moved to substitute party from Jennie Lumbra to the co-
administrators of her estate (ECF No 36). That pending motion is
before the Court and is addressed below.

damages for "sexual and physical assaults, emotional stress, mental anguish, deterioration of well-being and economic loss," *See* ECF No. 6 at 14; punitive damages; and attorney's fees. The State of Vermont requests a declaratory judgment finding that Defendant engaged in unlawful discrimination and retaliation in violation of the Vermont's Fair Employment Practices Act ("VFEPA"), 21 V.S.A. §§ 495-496; and seeks civil penalties of up to $10,000 for each VFEPA violation, a permanent injunction prohibiting future employment practices that violate VFEPA, and reasonable costs and attorney's fees.

## **Legal Standards**

I.   Protective Order

In general, courts have broad discretionary power over the discovery process. *See Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 474 (S.D.N.Y. 1982) (noting that while litigants have a "broad right of access to information" in order to "avoid potential abuse of this broad right . . . the rules invest the trial court with discretionary authority to control the discovery process"). Under Rule 26(c), a court can "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The party seeking the protective order has the burden of demonstrating good cause for that order. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142

(2d Cir. 2004). Usually in order to establish good cause, the moving party must articulate a "clearly defined and very serious injury" which would result in the absence of a protective order. *See United States v. Int'l Bus. Machines Corp.*, 67 F.R.D. 40, 46 (S.D.N.Y. 1975). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26(c) test." *Schiller v. City of New York,* No. 04 CIV. 7921 KMK JCF, 2007 WL 136149, at *5 (S.D.N.Y. Jan. 19, 2007) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). Furthermore, the Court must weigh the countervailing interests of both parties. *See Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 601 (2d. Cir. 1986) (stating that a court is expected to strike a balance between the plaintiff's "desire for full disclosure of relevant information against the defendant's desire to preserve the privacy of its employees").

Once the moving party has established good cause, "the court should consider other factors that may militate against issuing a protective order . . . [such as] whether the order will prevent the threatened harm, whether there are less restrictive means of preventing the threatened harm, the interests of the party opposing the motion, and the interests of the public." *See Koster*, 93 F.R.D. at 479. Trial courts have broad discretion in making the forementioned determinations. *See Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992)

(internal quotation marks omitted) ("The grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion.").

II.  Rule 25 Substitution of Party

Following the unexpected death of Ms. Lumbra, the co-administrators of her estate filed a Motion to Substitute Party (ECF No. 36). Defendant opposes that motion (ECF No. 38), alleging that Ms. Lumbra's claims for punitive damages and declaratory relief do not survive her death. Under Rule 25, when "a party dies and the claim is not extinguished, the court may order a substitution of the proper party." Fed. R. Civ. P. 25(a)(1). The question in this case thus becomes if Ms. Lumbra's claims survive her death.

## Discussion

I.  Protective Order

Here, both parties agree on the need for a protective order; they disagree, however, on the conditions of that order. Specifically, the parties disagree on the definition of "confidential information," the temporal scope of the order and if it applies to publicly-filed documents, as well as whether the documents deemed confidential can be destroyed at the conclusion of this case. The Court will address each of those issues below.

7

A.  Definition of "Confidential Information"

First, the parties disagree on the definition of
"confidential information," which has a direct bearing on what
is covered by the protective order. Plaintiff proposes that
confidential information includes "information that constitutes
or contains trade secrets pursuant to the Uniform Trade Secrets
Act ("USTA") § 1(4) (1985) or 9 V.S.A. § § 4601, *et seq.*; or
information that is otherwise entitled to protection from
dissemination under applicable law." ECF No. 57-2 at 3.
Defendant proposes that the definition of confidential
information be expanded to include "information a party in good
faith contends constitutes or contains trade secrets or other
confidential business information that could provide a
competitor with a competitive advantage;" or "information that a
party agreed to or is required to keep confidential;" or
"information that is otherwise entitled to protection from
dissemination under applicable law." ECF No. 55-1 at 3.
Plaintiff argues that Defendant's definition of confidential
information is too broad, and "fails to assign a definition
identifying documents or information that will cause a clearly-
defined, serious injury if disclosed ...." ECF No. 56 at 7. The
Court agrees with this position.

As discussed above, trial courts have broad discretion in employing protective orders. Despite that discretion, relevant case law requires that a party moving for a protective order articulate a "clearly defined and very serious injury" which would result in the absence of a protective order. *See Int'l Bus. Machines Corp.*, 678 F.R.D. at 46. "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning, do not satisfy the Rule 26 (c) test." *Schiller*, 2007 WL 136149, at *5 (quoting *Cipollone*, 785 F.2d at 1121).

The parties have already agreed that "Social Security numbers; taxpay-identification numbers; financial account numbers; credit card numbers; mother's maiden name; passwords; driver's license numbers or state identification numbers; names of minor children; dates or birth; and tax forms" all constitute confidential information. Given this comprehensive agreement, most sensitive information that would result in a "clearly defined and very serious injury" has been accounted for. Adopting Defendant's definition of confidential information as to also include "information a party in good faith contends constitutes or contains trade secrets" or "that could provide a competitor with competitive advantage" leaves the parties with a vague definition of "confidential information," based on a good faith standard, which will prolong the discovery disputes in this case. Furthermore, the Court fails to see a clearly

articulated injury within the vagueness of Defendant's definition. Plaintiff's definition, on the other hand, defines confidential information as "information that constitutes or contains trade secrets" under the USTA and information that "is otherwise entitled to protection from dissemination under applicable law." Under the USTA, a "trade secret" is defined as "information . . . [that] derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, another person who can obtain economic value from its disclosure or use . . . ;" and "the owner thereof has taken reasonable measures to keep such information secret;" 18 USC § 1839(3)(A)-(B). Plaintiff's proposal provides a clearly defined standard upon which the parties can make determinations about confidentiality. Plaintiff's definition also covers those items that constitute confidential business information from which disclosure would result in a tangible injury to Defendant. This is a comprehensive and employable definition.

Furthermore, in employing protective orders, the Court is to weigh the interests of the competing parties. While Defendant is undeniably entitled to certain confidentiality protections, including sensitive information and trade secrets, it is not entitled to blanket protection for anything that could provide a "information a party in good faith contends . . . could provide

a competitor with a competitive advantage." Furthermore, the
public interest requires transparency within the judicial
system, which would be limited in this case if a protective
order employed Defendant's good faith standard. While the Court
is sensitive to the fact that Defendant may have made an
agreement with McDonald's Corporation to keep certain
information confidential, Plaintiff is not bound by those
agreements, nor should Plaintiff's litigation efforts suffer as
a result of those agreements. To the extent that the information
Defendant promised McDonald's it would keep confidential is
considered a trade secret, is confidential business information,
is otherwise protected from disclosure by law, or is otherwise
covered as one of the already agreed upon confidential items,
then the Defendant is entitled to a protective order. Anything
outside of those parameters, however, does not meet the good
cause standard and thus does not justify the lack of
transparency inherent in orders of protection. Therefore, the
Court will adopt Plaintiff's definition of "confidential
information."

    B. Scope of Confidential Information

    Additionally, the parties disagree on the scope of the
protective order. Specifically, Plaintiff proposes that the
order's protections expire at the conclusion of discovery,
whereas Defendant proposes that the order's protections extend

beyond the conclusion of the case and that the protections apply to publicly filed judicial documents.

>    i.    Publicly Filed Judicial Documents

As discussed above, a party moving for a protective order must demonstrate good cause. For those documents to be filed publicly, however, the inquiry does not end at a showing of good cause. *See In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220, 221-23 (S.D.N.Y. 2006). "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This presumptive common law right is "founded upon the public's interest in monitoring the judiciary's administration of justice." *United States v. Basciano*, No. 03-CR-929, 2010 WL 11679716, at *2 (E.D.N.Y. May 12, 2010) (citing *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). While this presumption applies to those documents filed with a court, it does not presume public access to all discovery materials. *See Amodeo* 71 F.3d at 1050 (internal quotation marks omitted) ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach . . . and stand[ ] on a different footing than . . . a motion filed by a party seeking action by the court . . . .").

For those documents publicly filed, however, there is a special right of access, and the Second Circuit has recognized a presumption of access to judicial documents derived from the First Amendment which "demands broader disclosure than common law." *In re NBC Universal, Inc.*, 426 F. Supp. 2d 49, 56 (E.D.N.Y. 2006) (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006)). Given this presumption, "continued sealing of . . . documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Brown v. Maxwell*, 929 F.3d 41, 47 (2d Cir. 2019) (internal quotation marks omitted).

Thus, when a party moves to seal documents, the Court is expected to weigh the value of the common law right and First Amendment's presumption of openness against other factors. *See Amodeo*, 71 F.3d at 1050 (noting "countervailing factors" including "the privacy interests of those resisting disclosure" and "the danger of impairing law enforcement or judicial efficiency"). This inquiry requires that "a judge . . . carefully and skeptically review sealing requests to ensure that there really is an extraordinary circumstance or compelling need." *Mariano v. LA Fitness, Inc.*, No. CV 09-1395 (LDW) (ETB), 2010 WL 1459383, at *1 (E.D.N.Y. Apr. 13, 2010) (quoting *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)).

13

Given this presumption of openness and the deliberate and specific review that sealing requests require, the Court declines to extend the protective order to documents filed with the Court. If either party decides to use confidential information covered by the protective order in their public filings, they can make a specific motion to seal requests at that time, at which point the Court will engage in the inquiry described above. Until then, however, the public interest prevents the Court from applying the protective order to publicly filed documents.

    ii.  Other Information, Not Publicly Filed

For all other information designated as confidential not filed with the Court, the protective order's conditions will extend beyond the conclusion of this action. This information shall be treated as confidential and will be protected from disclosure outside of this litigation and any following appeals. The Court was discerning in the definition of confidential information for this very purpose—to ensure that information is subject to the order only where good cause exists. This process reflects an effort to serve the public interest in judicial transparency, while still maintaining Defendant's privacy. As a result, the Court is confident that only highly sensitive information will fall under the order. Furthermore, those documents not filed publicly are not subject to the First

14

Amendment presumption described above, and as such can remain under the protective order with a showing of good cause alone. The order's protections for those documents not part of the judicial record will therefore extend beyond the conclusion of the trial unless otherwise agreed to or ordered. Accordingly, the Court grants Defendant's motion to extend the protective order beyond the conclusion of the action, but it declines to extend the order to publicly filed judicial documents.

    C. The Destruction of Records

    Finally, the parties also disagree on the treatment of confidential information and documents at the conclusion of the case. In Defendant's proposed protective order, it suggests that both parties destroy or return to the opposing party those documents that have been designated as containing confidential information. Plaintiff opposes this proposal.

    The Court cannot order the destruction of the EEOC's records. The Federal Records Act ("FRA") manages the preservation and disposal of federal records. *See* 44 U.S.C. §§ 3101–3107. Under the FRA, agencies may not destroy records subject to the FRA without first obtaining the Archivist's approval.  44 U.S.C. §§ 3302, 3314 (such that "the Archivist shall promulgate regulations . . . establishing procedures for the compiling and submitting to the Archivist of lists and schedules of records proposed for disposal"). Specifically,

"records of the United States Government may not be alienated or destroyed under this chapter." *See* 44 U.S.C. § 3314. The act defines "records" as "all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation . . . as evidence of the organization, function, policies, decisions, procedures, operations, or other activities of the United States Government . . . ." 44 U.S.C. § 3301.

"Courts must exercise caution when issuing confidentiality orders so as not to demand that the EEOC destroy government documents, including notes and memoranda, in conflict with the EEOC's duty to obey the requirements of the [statute]." *E.E.O.C. v. Kronos Inc.,* 620 F.3d 287, 304 (3d Cir. 2010). The FRA is clear that federal agencies are expected to defer to the Archivist before destroying records. As a result, the Court cannot order the destruction of those documents. Plaintiff must first seek approval and follow the procedures of the FRA to maintain compliance with federal law—a process outside of the Court's jurisdiction. Defendant points out that obligations under the FRA do not extend to the State of Vermont or Ms. Lumbra's estate and that the provision directing the destruction of records should apply to those parties. While the FRA does not extend to Ms. Lumbra's estate or the State of Vermont, the Court

16

has already ordered that the protective order extend beyond the conclusion of trial. Therefore, it fails to see why ordering the destruction of records is a necessary intervention. *See Garcia v. Stemilt AG Servs. LLC*, No. 2:20-cv-00254-SMJ, 2020 WL 6870997, at *1 (E.D. Wash. Nov. 23, 2020) (holding that "[b]ecause the protective order continues after the conclusion of this lawsuit, it provides adequate protections against broad disclosures without the need to require the destruction of records as proposed by . . . Defendant"). Defendant's motion to enforce a provision of the protective order calling for the destruction or removal of these records is therefore denied.

II.   Motion to Substitute Party

Following Ms. Lumbra's death, the co-administrators of her estate filed a Motion for Substitution of Party. Fed. R. Civ. P. 25. As noted above, a Court can order a substitution of party following the death of a claimant if the claim survives. *See Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, CV 13-5475 (JS) (AKT), 2017 WL 9485707, at *2 (E.D.N.Y. Sept. 11, 2017) (Internal quotation marks omitted) ("[I]n considering a motion to substitute a party pursuant to Rule 25(a)(1), the Court must decide whether: (1) the motion was timely; (2) the claims survive the decedent's death; and (3) the party south to be substituted for the decedent is a proper party."). Defendant opposes the motion, arguing that Ms.

17

Lumbra's claims for punitive damages and declaratory relief are "extinguished by her death." *See* ECF No. 38 at 2. The Court agrees that the claims under federal law for declaratory relief and punitive damages are extinguished, and therefore will dismiss those claims. However, Ms. Lumbra's state law claim under VFEPA, as well as her claim for compensatory damages under federal law both survive her death. As a result, the Court will grant the Plaintiff's motion to substitute party for those claims.

A. Federal Law

Ms. Lumbra's claims for punitive damages do not survive her death. In general, a claim will survive the death of an injured party if it is "remedial rather than punitive." *See United States v. Wolin*, 489 F. Supp. 3d 21, 27 (E.D.N.Y 2020) (internal quotation marks omitted). In *Estwick v. U.S. Air Shuttle*, the Court held that while a Title VII claim for compensatory damages survived a plaintiff's death, the claim for punitive damages did not. 950 F. Supp. 493, 498 (E.D.N.Y. 1996) ("The punitive damages are plainly penal and must be dismissed under either federal or state law."). Other cases have held that federal common law governs on this question and that under federal common law, punitive damages are considered penal rather than remedial. *See Smith v. Dep't of Human Servs, State of Okl.*, 876 F.2d 832, 834 (10th Cir. 1989) (citing *James v. Home Constr.*

*Co.,* 621 F.2d 727, 729 (5th Cir. 1980); 7C C. Wright, A. Miller
& M. Kane, Federal Practice and Procedure § 1952 at 526 (1986))
("The question of the survival of an action grounded in federal
law is governed by federal common law when, as here, there is no
expression of contrary intent."). "The general rule under the
federal common law is that an action for a penalty does not
survive the death of the plaintiff." *See Smith*, 876 F.2d at 834-
35 (citing *Schreiber v. Sharpless,* 110 U.S. 76, 80 (1884)).

Furthermore, the Court finds that Ms. Lumbra's claims for
declaratory relief are also moot. *See Grinblat v. Nulife, LLC*,
20-CV-5854 (PKC) (PK), 2021 WL 1193147, at *1 (E.D.N.Y. Mar. 30,
2021) (citing *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308,
312 (5th Cir. 1997)) (concluding that ADA claims "become moot
when the plaintiff dies because the only relief available is
injunctive relief, and injunctive relief cannot benefit a
deceased plaintiff"); *see also Gershanow v. Cty. Of Rockland*,
No. 11-CV-8174 (CS), 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20,
2014) ("[G]iven that [the plaintiff] has died . . . the claims
for declaratory and injunctive relief are therefore moot.");
*Kahn v. NYU Med. Ctr.*, No. 06 CIV 13455 LAP, 2007 WL 2000072, at
*4-5 (S.D.N.Y. July 10, 2007), *aff'd*, 328 F. App'x 758 (2d Cir.
2009).

B. State Law

Despite federal common law precluding the survival of Ms. Lumbra's claim for punitive damages, the Court finds that her claims for punitive and compensatory damages survive under state law. VFEPA authorizes compensatory as well as punitive damages. Vt. Stat. Ann. Tit. 21, § 495 (b) ("Any person aggrieved by a violation of the provisions of this subchapter may bring an action . . . seeking compensatory and punitive damages or equitable relief . . .").  While VFEPA is silent on the survivability of those claims following the death of a claimant, and Vermont courts have not answered this question within the VFEPA context specifically, there is a history in the state of finding that actions brought under state law in other statutes survive the death of a litigant. *See e.g., Dodge v. Precision Const. Products, Inc.,* 820 A.2d 207, 213-14 (Vt. 2003) (holding that a state law workers compensation claim survived the death of claimant); *see also Kindred Nursing Centers E., LLC v. Est. of Nyce*, Case No. 5:16-cv-73, 2016 WL 3476414, at *3 (D. Vt. June 21, 2016) (citing other state and federal cases for assertion that fraudulent-transfer claims survive); *Taylor v. Schaffer*, No. 1:14-cv-123-jgm, 2015 WL 541058, at *5 (D. Vt. Feb. 10, 2015) (holding that Vermont negligence and personal injury claims survive the death of the claimant). Furthermore, several Vermont statutes account for the survivability of

claims. "An executor or administrator may commence ... in the right of the deceased, actions that survive to the executor or administrator and are necessary for the recovery and protection of the property or rights of the deceased . . . ." 14 V.S.A. § 1401. Furthermore, causes of action for personal injury may be "commenced and prosecuted by or against the executor or administrator," 14 V.S.A. § 1453, and actions for wrongful death must be brought by the deceased's "personal representative." 14 V.S.A. § 1492.

Finally, Vermont courts have acknowledged the importance of the survivability of actions in effectuating the remedial purposes of statutes. In *State v. Therrien*, the Vermont Supreme Court noted that "[t]here is an inconsistency between the remedial purposes of [the state statute] . . . and the common-law abatement rule" and that the Court "must apply remedial legislation liberally to accomplish its purposes." *See State v. Therrien*, 633 A.2d 272, 275-76 (Vt. 1993) ("[U]nless the Legislature says otherwise, we will presume that it is intended that actions pursued under the remedial terms of protective legislation survive the death of the wrongdoer in order to remedy the injustices done.").

Given this case law and history, Ms. Lumbra's claim for compensatory damages clearly survives. The question then becomes whether her claim for punitive damages survives, and the Court

finds that it does. The survivability of punitive damages
requires looking at the legislative intent behind statute; the
general rules suggests that if the statute is remedial in
nature, despite assessing penalties, the claim survives. *See
Therrien,* 633 A.2d at 275 (quoting *Survivability of Action
Brought Under Truth in Lending Act*, 53 A.L.R. Fed. 431, 432
(1981) ("The general rule today on survival of statutorily
created causes of action is that while actions to enforce a
penalty do not survive the death of either party, remedial
actions survive even though the damages assessed may technically
be called penalties."). Looking at the language of VFEPA, in
addition to compensating individual instances of discrimination,
the statute has a broader goal of eradicating workplace and
employment discrimination, *see Payne v. U.S. Airways Inc.,* 987
A.2d 944, 953 (Vt. 2009) (noting the remedial purpose of VFEPA
is "to deter and eradiate discrimination in [the state]")
(internal quotation marks omitted), and Vermont common law
directs the Court to interpret remedial schemes liberally. *See
Therrien*, 633 A.2d at 275 (noting that courts "must apply
remedial legislation liberally to accomplish its purposes").

   With this guiding principle in mind, a number of courts
have held that state statutes allow for the recovery of punitive
damages following the death of a plaintiff. *See e.g., Gasior v.
Mass. General Hosp.*, 446 Mass. 645, 654 (2006) (holding that if

an antidiscrimination statute allows for punitive damages, then that claim will survive the employee's death and noting that "[w]e see no reason to distinguish as to statutory remedies between a plaintiff who has suffered the indignities of unlawful discrimination (if proved) and who survives, and a similarly aggrieved plaintiff who is deceased . . . .); *Hawes v. Johnson & Johnson*, 940 F. Supp. 697, 702-04 (D.N.J. 1996) (holding that claims for compensatory and punitive damages survived plaintiff's death under New Jersey's local discrimination law and that plaintiff's estate could substitute party); *Earl v. Tupper*, 45 Vt. 275, 288 (1873) (holding that an administrator may recover exemplary damages on behalf of the deceased and noting that the "decease of the party injured, would not take away from the bad character of the acts, nor prevent the jury from holding them in detestation . . . ."); *see also Harry v. Kent Elastomer Products, Inc.*, 538 F. Supp. 3d 776, 784 (N.D. Ohio 2021)(quoting *Whetstone v. Binner*, 57 N.E.3d 1111, 1113 (Ohio 2016)) (noting "that it is settled Ohio law that 'the right to punitive damages continues when an injured plaintiff has died and the plaintiff's claim is pursued by a representative of his or her estate'"); *Small v. Am. Tel. & Tel. Co.*, 759 F. Supp. 1427, 1430-31 (W.D. Mo. 1991)(holding that an employee's request for punitive damages based on claims of race discrimination survived his death).

Certain jurisdictions have also recognized the survival of claims for punitive damages in instances where the claim was initiated before the plaintiff's death, as it was in this case. *See Amos v. Prom, Inc*., 115 F. Supp. 127, 134 (N.D. Iowa 1953*); see also* H*ouston-American Life Ins. Co. v. Tate*, 358 S.W.2d 645, 647-48 (Tex. Civ. App. Waco 1962)(Internal quotation marks omitted) ("In a majority of cases . . . the view has been taken that where an action in which exemplary damages might properly be allowed has been begun by the injured party himself, his later death does not preclude recovery of such damages by his  personal representative."). Furthermore, courts have recognized the survival of claims for compensation that are penal in nature. *See First American Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1122 (D.D.C. 1996) (holding that treble damages under racketeering statute are remedial in nature and survive the death of a party); *Holford USA Ltd., Inc. v. Harvey*, 169 F.R.D. 41, 43 (S.D.N.Y. 1996) (holding that racketeering damages do not abate); *Munson v. Raudonis*, 118 N.H. 474, 478 (1978) (stating that "compensating damages" can reflect "aggravating circumstances" when act involved is "wanton, malicious, or oppressive").

Given that Vermont courts have acknowledged the remedial nature of VFEPA as it targets eradicating workplace discrimination broadly and given the robust history among courts

in granting the survival of punitive damages claims following the death of a litigant, the Court holds that Plaintiff's claim for punitive damages under VFEPA survives.

### Conclusion

In conclusion, Defendant's Motion to Enter its Proposed Order (ECF No. 55) is granted in part and denied in part and Plaintiff's Motion for Protective Order (ECF No. 57) is also granted in part and denied in part. Plaintiff EEOC's request for hearing on this issue is denied as moot.

Additionally, Ms. Lumbra's motion to substitute party (ECF NO. 36) is granted for her state law claim and for her compensatory damages claim under federal law. Plaintiff's claim for punitive damages and declaratory relief under federal law are hereby dismissed.

DATED at Burlington, in the District of Vermont, this 18th day of May, 2022.

/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge