IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

|  |  |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, | ) ) ) ) |
| | ) |
| ESTATE OF JENNIE PICKETT LUMBRA, Plaintiff-Intervenor, | ) ) ) |
| | ) Case No. 2:21-cv-00099-wks |
| STATE OF VERMONT, Plaintiff-Intervenor, | ) ) ) |
| | ) ) |
| v. | ) ) |
| | ) ) |
| COUGHLIN, INC., D/B/A MCDONALD'S, Defendant. | ) ) ) ) ) |

## CONSENT DECREE

Plaintiff United States Equal Employment Opportunity Commission ("EEOC") filed this action alleging that Defendant Coughlin, Inc. ("Defendant") violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and to provide appropriate relief to individuals harmed by such practices. Specifically, the EEOC alleged that Defendant discriminated against Jennie Lumbra and other similarly aggrieved employees (collectively, "Aggrieved Individuals") at Defendant's Randolph, Vermont location by subjecting them to a hostile work environment based on sex. The EEOC further alleged that Defendant retaliated against Jennie Lumbra because she complained of unlawful sex discrimination.

Plaintiff-Intervenor State of Vermont intervened in this action, alleging that in addition to the allegations brought by the EEOC, Defendant violated Vermont's Fair Employment Practices Act, 21 V.S.A. §§ 495-496 ("VFEPA") and sought appropriate relief, including civil penalties as provided by 21 V.S.A. § 495b(a) and 9 V.S.A. § 2458(b).

The EEOC, State of Vermont, and Defendant (collectively, the "Parties") have agreed that this action should be resolved by entry of this Consent Decree ("Decree").  The Parties, therefore, hereby stipulate and consent to the entry of this Decree as final and binding on the Parties, including Defendant's successors, assigns, subsidiaries, and any other entity with which Defendant may merge or consolidate.  The Parties have agreed this Decree may be entered into without findings of fact and conclusions of law having been made and entered by the Court.

In consideration of the mutual promises and agreements contained in this Decree, the sufficiency of which is hereby acknowledged, the Parties agree as follows, the Court finds appropriate, and it is therefore ORDERED, ADJUDGED, AND DECREED that:

## A.      GENERAL PROVISIONS

1.      This Decree is final and binding on the Parties and resolves the claims alleged in the EEOC's Complaint in this case, which arose from EEOC Charge No. 523-2020-00221, and the State of Vermont's Intervenor Complaint in this case.  This Decree does not resolve any other charge of discrimination pending before the EEOC or the Vermont Office of the Attorney General, or any charge that may be filed in the future. This Decree does not limit the State of Vermont's legal authority to enforce VFEPA and other state statutes within its enforcement, including, without limitation, the Vermont Attorney General's authority to conduct audits related to sexual harassment pursuant to 21 V.S.A. § 495h(i)(1)-(3).

2.      The Parties agree and the Court finds that this Court has jurisdiction over the subject matter of this action and the Parties, that venue is proper, and that all administrative prerequisites have been met.

3.      By mutual consent of the Parties, this Decree may be amended in the interests of justice and fairness, and to facilitate execution of this Decree's provisions.  No waiver, modification, or amendment of any provision of this Decree will be effective unless made in writing, approved by all Parties to this Decree, and approved or ordered by the Court.

4.      No party shall contest the Court's jurisdiction to enforce this Decree and its terms or the right of the EEOC or the State of Vermont to bring an enforcement action upon breach of any term of this Decree in any federal court with jurisdiction.  Breach of any term of this Decree shall be deemed to be a material, substantive breach of this Decree.  The Court will retain jurisdiction over any such enforcement proceeding initiated during the duration of this Decree. Nothing in this Decree will be construed to preclude the EEOC or the State of Vermont from bringing proceedings to enforce this Decree in the event that Defendant fails to perform any of the promises or representations herein.  This Decree will be construed by this Court under applicable federal law.

5.      The State of Vermont will not take further VFEPA enforcement action against Defendant based upon the same facts or allegations set forth in the EEOC's Complaint or the State of Vermont's Intervenor Complaint in this action— except for any enforcement the State may take to ensure compliance with this Decree as set forth in Paragraph 4. This paragraph does not otherwise limit the State's enforcement powers as set forth in Paragraph 1.

6.      If one or more provisions of this Decree are rendered unlawful or unenforceable as a result of a legislative act or a decision by a court of competent jurisdiction, the following

will apply to ensure that this Decree continues to effectuate the intent of the Parties:  the

provisions of this Decree that are not rendered unlawful, unenforceable, or incapable of

performance as a result of such legislative act or court decision will remain in full force and

effect and the Parties' responsibilities will not abate as to any and all provisions that have not

been rendered unlawful or unenforceable, except to the extent that the intent of this Decree

would be undermined.

   7.  The terms of this Decree represent the full and complete agreement of the Parties.

**B.** **DEFINITIONS**

   7.  "Defendant" means Defendant Coughlin, Inc. d/b/a McDonald's, its officers,

managers, agents, successors, assigns, full or partial purchasers, subsidiaries, affiliates, and any

other corporation or other entity into which Defendant may merge, consolidate, or otherwise

become affiliated with, and any entities in active concert with it.

   8.  "Day" or "days" mean calendar days and includes weekends and holidays.

   9.  "Effective Date" means the date this Decree is entered by the Court.

**C.** **MONETARY RELIEF**

   10.  <u>Aggregate Payment.</u>  Defendant agrees to pay one million six hundred thousand

dollars ($1,600,000) in full settlement of this lawsuit.  Payment shall be made to Plaintiff-

Intervenor the Estate of Jennie Pickett Lumbra, to Plaintiff-Intervenor State of Vermont, and into

a Class Settlement Fund, as provided herein.

   11.  <u>Plaintiff-Intervenor Jennie Lumbra.</u>  Within ten (10) days of the Effective Date,

Defendant shall pay two hundred seventy-five thousand dollars ($275,000) to Plaintiff-

Intervenor the Estate of Jennie Pickett Lumbra, representing the income she would have earned

if she had not been terminated and includes compensation for all damages (compensatory,

punitive, or otherwise), costs, and attorney's fees.  Such payment shall be made by terms agreed upon separately by Defendant and Plaintiff-Intervenor the Estate of Jennie Pickett Lumbra, through her counsel.

12.     Plaintiff-Intervenor State of Vermont.  Within ten (10) days of the Effective Date, Defendant shall pay one hundred twenty-five thousand dollars ($125,000) to Plaintiff-Intervenor State of Vermont, representing the civil penalties, costs, and attorney's fees pursuant to Vermont's Fair Employment Practices Act, 21 V.S.A §§ 495–496; 9 V.S.A. § 2458.  Such payment shall be paid to the Vermont Office of the Attorney General, attn. Business Office, via the online AGO Payment Portal, or by regular mail to an address designated by the State of Vermont.

13.     Class Settlement Fund.  In addition to the payments to the Plaintiff-Intervenors as described above, within fifteen (15) days of the Effective Date, the Claims Administrator, defined in Section D below, and Defendant shall establish a Qualified Settlement Fund under Section 468(b) of the Internal Revenue Code in the principal amount of one million two hundred thousand dollars ($1,200,000) ("Class Settlement Fund") for the purpose of providing individual monetary awards to the Aggrieved Class Members ("ACMs").  The Class Settlement Fund money is a debt owed to and collectible by the United States Government, for the benefit of the ACMs.  Within ten (10) days of the Effective Date, Defendant shall pay the one million two hundred thousand dollars ($1,200,000) for the Class Settlement Fund to the Claims Administrator in manner to ensure that it meets the deadline to establish the Qualified Settlement Fund.  The EEOC shall have the sole authority and discretion to determine the individuals who are ACMs and the amount to be paid to each eligible ACM in accordance with the procedure outline in Section D below.

14.     <u>Claims Administration Expenses.</u>  Defendant shall be responsible for all costs relating to the claims administration process.  Payment of these costs shall be in addition to and, therefore, not taken from the Class Settlement Fund.

15.     <u>Failure to Make Timely Payment.</u>  If Defendant fails to tender the payments described in Paragraphs 10 through 14 this Decree, Defendant will pay interest on the defaulted payment(s) at the rate calculated pursuant to 26 U.S.C. § 6621 (b) until the same is paid, and bear any additional costs incurred by Defendant's non-compliance or delay.

**D.      CLAIMS ADMINISTRATOR AND CLAIMS ADMINISTRATION**

16.     <u>Timelines</u>.  All timeframes and deadlines established in Paragraphs 17 through 24 below may be modified by written agreement of the parties, without notification to the Court.

17.     <u>Claims Administrator.</u>  The EEOC has selected Settlement Services, Inc. as the Claims Administrator.  The Claims Administrator shall: (i) facilitate the creation of a Qualified Settlement Fund under Section 468 of the Internal Revenue Code; (ii) send notices and forms relating to settlement; (iii) receive forms relating to settlement; (iv) perform skip tracing services on any notices returned as undeliverable; (v)  transmit notifications of monetary awards; (vi) issue checks to the ACMs from the Class Settlement Fund; (vii) issue related tax documents; and (viii) perform such other administrative tasks as it and EEOC may deem necessary to facilitate the claims administration process.

18.     <u>Information in Defendant's Possession.</u>  Defendant may be asked by the EEOC to provide information and data that has not already been provided to EEOC and is necessary to make award determinations and/or facilitate payment of the awards.  Defendant shall respond to all of the EEOC's requests for information relating to the ACMs within ten (10) days of the receipt of the request, or as soon as practicable, by providing all responsive documents and information available or reasonably accessible to Defendant.  The information requested by the

EEOC pursuant to this paragraph shall be limited to the contact and other personal information about ACMs and any other information that is reasonably available or accessible to Defendant concerning the ACMs.

19.     Allocation of Monetary Relief.  The EEOC shall be the sole determiner of the amount of monetary relief to be received by any ACM.  Defendant will not participate in or object to the EEOC's determinations.

20.     Release of Claims.  In order to receive a payment from the Class Settlement Fund, each ACM shall sign a release, which is attached hereto as Exhibit A ("Release").  The EEOC shall collect signed releases and provide copies to the Claims Administrator and to Defendant.

21.     Notification of Awards.  The EEOC shall provide the Claims Administrator with the signed releases and notify the Claims Administrator of the amount of the award, and instruct the Claims Administrator to issue the monetary award.

22.     Distribution of the Class Settlement Fund.  Within fifteen (15) days of the receipt of notice from the EEOC, the Claims Administrator shall issue and mail payments from the Class Settlement fund to each ACM deemed eligible for a monetary award in the amount determined by the EEOC.

23.     Tax Treatment of Monetary Awards.  The monetary awards shall be allocated to lost wages and to compensatory and punitive damages as appropriate based on the awards. This determination shall be made by the EEOC.  The Claims Administrator shall issue an IRS Form W-2 to each ACM with regard to any lost wage component of the monetary award, and an IRS Form 1099 to each ACM with regard to any compensatory and punitive damages component of the monetary award.

24.     <u>Distribution of Any Residual Amount in the Class Settlement Fund.</u>  In the event that checks are returned and/or the Class Settlement Fund is not completely distributed for any reason within ninety (90) days after mailing, the remaining sum shall become part of a cy pres fund to be distributed to a non-profit serving adolescent and/or young adults in Vermont who experience sexual assault, sexual violence, and/or workplace sexual harassment.  EEOC shall select an appropriate cy pres designee in consultation with the State of Vermont.

**E.     INJUNCTIVE RELIEF**

25.     Defendant is permanently enjoined from creating, maintaining, encouraging, condoning, and/or failing to prevent or correct harassment because of sex, in violation of Title VII or VFEPA.

26.     Defendant is permanently enjoined from engaging in reprisal or retaliation of any kind against any person because of such person's opposition to any practice made unlawful under Title VII or VFEPA.  Defendant shall not retaliate against a person because such person brings an internal complaint of discrimination with Defendant; because such person files or causes to be filed a charge of discrimination with the EEOC, the Vermont Office of the Attorney General, or any other agency charged with investigating employment discrimination complaints or whose statements serve as the basis of a charge; or because such person testifies or participates in the investigation or prosecution of an alleged violation of Title VII or VFEPA.  Defendant shall not retaliate in any manner against any individuals identified as Aggrieved Individuals, witnesses, or who assisted in the investigation giving rise to this action.  Nor shall Defendant retaliate against any such persons identified as a witness or possible witness of discrimination in future investigations or proceedings.

**F.      POSTINGS AND NOTICES**

27.     Within seven (7) days of the Effective Date of this Decree, Defendant shall post in each of its locations, in a conspicuous place frequented by employees, eleven (11) inches by fourteen (14) inches laminated copies of the EEOC's "Equal Employment Opportunity is the Law" poster ("EEO Poster").  If the EEO Poster becomes defaced or illegible, Defendant will replace it with a clean copy.

28.     Within seven (7) days of the Effective Date of this Decree, Defendant shall post in each of its locations, in a conspicuous place frequented by employees, eleven (11) inches by fourteen (14) inches laminated copies of the State of Vermont Department of Labor's "Sexual Harassment is Illegal" poster ("State Sexual Harassment Poster").  If the State Sexual Harassment Poster becomes defaced or illegible, Defendant will replace it with a clean copy.

29.     Within seven (7) days of the Effective Date of this Decree, Defendant shall post in each of its locations, on all employee bulletin boards, in all employee breakrooms, and near employee clock-in and clock-out devices for one (1) year; and shall maintain on the employee bulletin board in the Randolph McDonald's restaurant for the duration of the decree, an eleven (11) inches by fourteen (14) inches laminated copy of the Notice of Lawsuit and Settlement ("Notice"), attached as Exhibit B to this Decree.  If a Notice becomes defaced or illegible, Defendant will replace it with a clean copy.  Defendant shall certify with the EEOC, in writing, within ten (10) days of the Effective Date of this Decree that the Notice has been properly posted, including identifying the locations where the Notices have been posted.

**G.      INDEPENDENT EEO COMPLAINT HOTLINE**

30.     Within sixty (60) days of the Effective Date, Defendant shall retain the services of an independent third-party business entity to provide and operate a dedicated EEO telephone

toll-free hotline for Defendant's employees to report incidents of sexual harassment, the existence of a hostile work environment, discrimination, or retaliation (the "Hotline").  The entity providing the Hotline shall have as its primary business the provision of such services and have no previous financial relationship with Defendant, its owner, or any of its attorneys, employees, or agents.  Each proposed Hotline operator must submit a statement of independence, under oath, confirming that they have no prior financial relationship with Defendant, its owner, or any of its attorneys, employees, or agents.  Within thirty (30) days of the Effective Date, Defendant shall provide the EEOC and the State of Vermont with the name and business contact information of the proposed Hotline operator and the statement of independence it provides.

31.     The Hotline operator shall have the authority and obligation to:

a.      Provide a dedicated, toll-free EEO telephone hotline for Defendant's employees to report incidents of sexual harassment, the existence of a hostile work environment, discrimination, or retaliation;

b.      Allow complainants to identify themselves or to submit complaints anonymously;

c.      Be available to accept complaints 24 hours per day, 7 days per week, 365 days per year;

d.      Maintain detailed written records of all reports and complaints; and

e.      Forward to Defendant's senior managers, including, but not limited to, Charles Coughlin and his designee(s), copies of the written records of all reports and complaints within 24 hours of receipt of the complaint or report, for review and action by Defendant.

32.     Defendant shall be responsible for all costs incurred for the Hotline operator's services.

33.     Within seventy-five (75) days of the Effective Date, Defendant will post notices in all of its locations, in a conspicuous place frequented by employees, advertising the Hotline, including the Hotline phone number, and a statement that: (a) complaints can be made anonymously; (b) the Hotline is toll-free; (c) the Hotline is operated by an independent third-party; and (d) the Hotline is available 24 hours a day, 7 days a week, 365 days a year.

**H.     EMPLOYMENT ANTI-DISCRIMINATION POLICIES AND PROCEDURES**

34.     Within thirty (30) days of the Effective Date, Defendant shall issue a revised policy applicable to all of Defendant's locations that explains, defines, and prohibits: (a) discrimination in the terms and conditions of employment including but not limited to hiring, firing, and promoting employees; (b) harassment on the basis of sex or any other protected status; and (c) retaliation (the "Anti-Discrimination Policy").  This policy shall be drafted in plain and simple language.  The Anti-Discrimination Policy shall include the following minimum criteria:

> a.     Prohibits discrimination against employees on the basis of sex;
>
> b.     Prohibits any act, policy, or practice that has the effect of creating, facilitating, or permitting the existence of a work environment that is hostile to employees based on sex through acts such as, but not limited to, physical or verbal abuse or derogatory comments;
>
> c.     Provides a definition of sexual harassment, with examples;
>
> d.     Prohibits retaliation against employees for opposing employment practices they believe are discriminatory or for participating in any investigation,

whether internal or external, of a charge or claim of discrimination, including sexual harassment;

e. Provides a definition of retaliation, with examples;

f. Includes a complaint procedure designed to encourage employees to come forward with complaints regarding violations of Defendant's Anti-Discrimination Policy, which shall meet the following minimum criteria;

 i. Provides multiple effective mechanisms for reporting incidents of discrimination, harassment, and retaliation, including, but not limited to, information about the Hotline detailed in Paragraphs 30-31 above, and information about and necessary to make a complaint—at any time—to the EEOC, the Vermont Office of the Attorney General, and the New Hampshire Commission for Human Rights;

 ii. Encourages prompt reporting;

 iii. Provides that complaints of discrimination, harassment, or retaliation can be made either in writing or orally;

 iv. Includes a complaint form which an employee may, but is not required, to use;

 v. Identifies, by name and title, employees to whom a complaint and provides their contact information;

 vi. States that making complaints to the person who is allegedly perpetrating the discrimination, harassment, or retaliation is not required under any circumstances;

vii.        Provides assurance that complainants shall not be subjected to retaliation;

viii.       States that complaints will be kept confidential to the extent practicable under the circumstances; and

ix.        States that any non-anonymous complaining party will be promptly informed once an investigation of discrimination, harassment, or retaliation has been completed and the outcome of that investigation, including any remedial actions taken;

g.        Requires the prompt investigation of complaints of discrimination, harassment, and retaliation;

h.        Provides for the discipline up to and including immediate discharge of anyone who violates Defendant's Anti-Discrimination Policy; and

i.        States that all supervisors and managers, of whatever rank, have a duty to document—in written form—and to report any and all observations or complaints of potential or alleged discrimination, harassment, or retaliation directly to designated human resources personnel, and that failure to carry out this duty is grounds for disciplinary action, up to and including immediate discharge.

35.     Within thirty (30) days of the Effective Date, Defendant shall distribute hard copies of the Anti-Discrimination Policy to all of its employees at all of its locations by either direct distribution by hand or mail, to the employee's address of record.  Employees shall be advised that they are permitted to keep this policy and take it home with them for their own records.  Defendant shall distribute a hard copy of this policy to each subsequently hired

temporary, seasonal, or permanent employee at the time of hire and shall be advised that they are permitted to keep this policy and take it home with them for their own records.

36.     Within thirty (30) days of the Effective Date, Defendant shall institute a policy regarding the documentation of complaints of sex discrimination and retaliation, and investigation of the same.  Pursuant to this policy, regarding each charge, complaint, or report (whether formal or informal, oral or written) and each corresponding investigation of alleged sex discrimination or retaliation, Defendant shall compile an investigative file which shall contain the following:

    a.     The name, home address, home telephone number (if applicable) and cellular telephone number, job title, and employee number of each non-anonymous complainant or potentially aggrieved individual;

    b.     All written records of all reports and complaints provided to Defendant by the Hotline operator;

    c.     The date of the charge, complaint, or report;

    d.     The date(s) on which the incident(s) allegedly occurred;

    e.     The location(s) where the incident(s) allegedly took place;

    f.     If not received through the Hotline, the name and job title of the supervisor or manager who first received the charge, complaint, or report;

    g.     The specific allegations that were made;

    h.     The name, home address, home telephone number (if applicable) and cellular telephone number, job title, and employee number of each person allegedly involved in the sex discrimination or retaliation;

i.        The name, home address, home telephone number (if applicable) and cellular telephone number, job title, and employee number of each potential witness;

j.        The complete substance of any statements made by each complainant, potential aggrieved individual, person allegedly involved in the discrimination or retaliation, and each witness;

k.        A detailed description of Defendant's conclusions regarding the charge, complaint, or report, and any corrective action taken in response to the charge, complaint, report, or investigation;

l.        The date on which the complaining person was informed that the investigation was completed and the outcome of that investigation, including any remedial actions taken; and

m.        A description of any prior allegations of discrimination, harassment, or retaliation against the individual then alleged to have engaged in discrimination, harassment or retaliation, including (i) the name of any individual who previously made a complaint against this person; (ii) the date any such prior complaint was made, (iii) the specific allegations that were made; (iv) the outcome of the investigation into any such prior complaint; and (v) any corrective action taken in response to any such prior complaint.

Defendant shall also retain with the investigative file any other documents created or obtained in relation to a charge, complaint, report, or investigation, including but not limited to affidavits, witness statements, interview notes, summaries, and electronic communications.  Defendant shall

retain all of the aforementioned records for a period of ten (10) years following the submission of the charge, complaint, or report.

37.     For the duration of this Decree, Defendant shall retain all personnel, payroll, and other documents of any character related to any person complaining of or otherwise reporting sex discrimination or retaliation, and any person who is involved (including, but not limited to, witnesses and those identified as potential perpetrators) in any charge, complaint, or report of sex discrimination or retaliation.

## I.     EXECUTIVE MESSAGE

38.     Within sixty (60) days of the execution of this Decree, Defendant shall record an executive message made available to all employees via web-based platform from Charles Coughlin or any then owner or Chief Executive Officer/President, which: (1) emphasizes Defendant's commitment to ensure a safe, harassment-free workplace; (2) underscores Defendant's commitment to its policies prohibiting discrimination, harassment, and retaliation in the workplace; and (3) encourages reporting, including bystander reporting, of any violations of Defendant's Anti-Discrimination Policy.  All new employees will be required to view the recording during orientation and all other employees will be required to view the recording once each year.

## J.     INDEPENDENT EEO COMPLIANCE MONITOR

39.     Within thirty (30) days of the Effective Date, Defendant shall propose to the EEOC and the State of Vermont an independent third-party Compliance Monitor ("Monitor"), who shall have responsibility for monitoring Defendant's compliance with this Decree for its duration.  The EEOC and the State of Vermont shall inform Defendant within fifteen (15) days of receipt of Defendant's proposed Monitor whether it agrees to Defendant's proposed Monitor.

If the Parties, after reasonably conferring, cannot agree to a Monitor within forty-five (45) days of the Effective Date, the Parties agree to each submit three proposed alternative names to the Court for its selection of a Monitor.

40.    Defendant shall compensate the Monitor at a reasonable and customary hourly rate set by the Monitor for their services and those of any agents, employees, or associates whose assistance the Monitor reasonably requires in fulfilling the Monitor's obligations under this Decree on no less than a monthly basis.  Defendant shall promptly pay all reasonable fees and costs of the type contemplated by this paragraph, which have been certified in writing by the Monitor to Defendant, that were incurred by the Monitor in connection with the performance of the Monitor's duties under this Decree.

41.    Defendant shall work cooperatively with the Monitor to facilitate performance of his/her duties under this Decree, and the Monitor shall work cooperatively with Defendant to assist and advise on compliance with this Decree.  The Monitor will perform their work objectively and independently, and not be subject to any undue influence by any person, corporation, or governmental agency.

42.    If the Monitor is not satisfied with Defendant's efforts to comply with this Decree, then the Monitor shall request from Defendant any information, including documents, that the Monitor deems necessary to evaluate Defendant's efforts to comply with the Decree.  At any time, the Monitor shall raise any unresolved concerns he/she has with Defendant's efforts to comply with this Decree with the EEOC and the State of Vermont.

43.    The EEOC or the State of Vermont may communicate directly with the Monitor at any time.

44.     Among other responsibilities, the Monitor shall ensure compliance with the terms

of this Decree by:

        a.     Reviewing reports and information from Defendant concerning

        Defendant's compliance with this Decree;

        b.     Reviewing all reports received by the Hotline during the duration of this

        Decree;

        c.     Reviewing all documentation of complaints of sex discrimination and

        retaliation described in Paragraph 36;

        d.     Reviewing Defendant's investigation of complaints and reports described

        in Paragraph 36;

        e.     Informing Defendant of the Monitor's agreement or disagreement with the

        Defendant's proposed resolution of complaints and reports described in Paragraph

        37, and the reasons therefor;

        f.     Reviewing Defendant's final resolution of complaints and reports

        described in Paragraph 36; and

        g.     Providing a statement to the EEOC and State of Vermont included as part

        of Defendant's reporting requirements, described in Section M below, providing

        the Monitor's assessment of Defendant's efforts to comply with the Decree to

        date.

45.     If Defendant receives a complaint or report described in Paragraph 36, the

Defendant shall forward the complaint or report to the Monitor and notify the EEOC and State of

Vermont within seven (7) days of receipt of said complaint or report.  Within seven (7) days of

the conclusion of Defendant's investigation into a complaint or report described in Paragraph 36,

Defendant will provide the Monitor with a written report summarizing the investigation, all underlying documentation associated with the investigation as described in Paragraph 36, and any proposed conclusions and remedial actions.  Defendant shall not raise a claim of privilege regarding any information or documents that are received or created during the investigation. Defendant shall require personnel within its employ, upon request by the Monitor, to cooperate reasonably with and to be interviewed by the Monitor for purposes of reviewing Defendant's investigation, proposed conclusions, and proposed remedial actions regarding any such complaint or report described in Paragraph 36.  The Monitor shall also have reasonable and timely access to all relevant books, data (including databases), documents, and other information necessary or appropriate to exercises the Monitor's duties described herein.

46.     Prior to Defendant finalizing any conclusions and/or taking any remedial actions associated with any complaint or report described in Paragraph 36, the Monitor shall, in writing, inform Defendant whether the Monitor agrees or disagrees, in whole or in part, with the proposed conclusions reached in Defendant's investigation and/or Defendant's proposed remedial actions.  If the Monitor disagrees, in whole or in part, with Defendant's proposed conclusions and/or Defendant's proposed remedial actions associated with any complaint or report described in Paragraph 36, the Monitor shall first attempt to resolve the disagreement with Defendant.  If the Defendant and the Monitor are unable to reach a resolution of their disagreement to the satisfaction of the Monitor, the Monitor shall report to the EEOC and State of Vermont any such disagreement, including the specific issues of disagreement, and provide the EEOC and State of Vermont with Defendant's written report summarizing the investigation, underlying documentation associated with the investigation, and proposed conclusions and proposed remedial actions as described in Paragraph 36.

**K.    TRAINING**

47.    Within sixty (60) of the Effective Date and annually thereafter, Defendant shall provide live, in-person, interactive training to as many of its employees as possible at least once per year.  Defendant shall communicate to all employees that attendance at the live, in-person training is a mandatory condition of their employment.  Defendant shall be deemed in compliance with this Paragraph if 80% of its employees attend the live, in-person, interactive training at least once per year, and shall provide a report to the Monitor certifying that 80% attendance has been achieved.  Employees who do not attend a live training for whatever reason will be required to view a recording of a live training, will be provided with the trainer's name and contact information, and will be provided with the opportunity to both answer and ask questions about how to recognize and respond to potentially discriminatory behavior in the workplace.  Such training shall be no less than ninety (90) minutes in duration and shall be provided by a subject-matter expert in equal employment opportunity law agreed to by the EEOC and State of Vermont.  The training shall include:

    a.    Defendant's Executive Message as described in Paragraph 38;

    b.    A definition of sex discrimination, including sexual harassment, and a statement that it is against the law;

    c.    The types of conduct that are not acceptable in the workplace, including conduct that, if left unaddressed, may rise to the level of unlawful sex harassment (including realistic hypotheticals based on Defendant's workplace and/or industry);

d.　　The consequences of engaging in unacceptable conduct in the workplace, including an explanation that corrective action will be a consequence of such conduct;

e.　　Employees' rights and responsibilities if they experience or witness unacceptable conduct at work, including the ways in which they can report harassment;

f.　　Encouragement of bystander reporting, that is, the training will convey that all individuals in the workplace are encouraged (and, for supervisors and managers, required) to take action if they observe any problematic behavior, and the training will explain how they can do so;

g.　　A definition of retaliation and statement that it is against the law;

h.　　The types of conduct that may constitute retaliation;

i.　　The consequences for engaging in retaliatory conduct;

j.　　Employees' right to be free from retaliation and responsibility to refrain from conduct that may constitute retaliation;

k.　　An explanation of Defendant's Anti-Discrimination Policy and complaint processes, including, but not limited to: (i) information about Defendant's Hotline; (ii) that complaints can be made anonymously; (iii) complaints will be kept confidential to the extent practicable under the circumstances; (iv) how an investigation will take place; (v) that any complaining person will receive timely notice of the investigation's outcome and any remedial actions taken; and (vi) an assurance that any complaining person or person

who provides information as part of any investigation will not be subject to retaliation;

l. Identification of federal, state, and local agencies responsible for enforcing anti-discrimination laws, a statement that employees can also make complaints to these agencies at any time, and contact information for each agency; and

m. Interactive training, providing participants opportunities both to answer and ask questions about how to recognize and respond to potentially discriminatory behavior in the workplace.

48. Defendant shall provide a recorded version of this training to all new workers within fifteen (15) days of their hire.  Defendant shall provide all new workers with the opportunity to both answer and ask questions about how to recognize and respond to potentially discriminatory behavior in the workplace, and shall provide the trainer's name and contact information to all newly-hired employees.

49. Within sixty (60) days of the Effective Date and annually thereafter, Defendant shall provide live, in-person, interactive training to all employees above the rank of Crew Member, whatever rank, that is in addition to the training described in Paragraph 47.  Such training shall be no less than two (2) hours in duration and be provided by a subject-matter expert in equal employment opportunity law agreed to by the EEOC and State of Vermont.  The training shall address:

a. The effect of sex harassment on employees and the ways in which it affects performance and mental health;

b.      Implicit bias, including strategies to recognize implicit bias and prevent implicit bias from affecting decisions relating to employees;

c.      Applicable laws prohibiting discrimination, retaliation, and harassment, including Title VII and VFEPA;

d.      Management's role in preventing sex harassment and stopping it if it occurs, including by engaging in bystander intervention;

e.      Hypotheticals where managers are required to intervene when they witness sex harassment, using realistic hypotheticals based on Defendant's workplace and/or industry;

f.      Information on recognizing complaints of sex harassment, using realistic hypotheticals based on Defendant's workplace and/or industry;

g.      How to receive complaints of sex harassment, discrimination and retaliation;

h.      The duty and responsibility of all managers to document—in written form—and report any complaints of sex harassment, discrimination, or retaliation (including so-called "informal" complaints), and the penalties for failing to do so;

i.      Information on recognizing retaliation, using realistic hypotheticals based on Defendant's workplace and/or industry; and

j.      Management's role in preventing retaliation and stopping it if it occurs.

50.     Defendant will provide a recorded version of this training to all new employees above the rank of Crew Member within fifteen (15) days of hire.

51.     Within sixty (60) of the Effective Date and annually thereafter, Defendant shall provide live, in-person, one-on-one interactive training to Senior Supervisor Mary Brown that is in addition to the training described in Paragraphs 47 and 49.  Such training shall be no less than two (2) hours in duration and shall be provided by a subject-matter expert in equal employment opportunity law agreed to by the EEOC and the State of Vermont.  Should Ms. Brown no longer be employed by Defendant for any reason, this obligation shall transfer to her successor.  The training shall address:

a.      Legal obligations concerning discrimination, harassment, and retaliation investigations;

b.      Investigative techniques, including identification of potential witnesses or others who may have been subjected to similar alleged treatment, interviewing techniques, and other sources of evidence in discrimination, harassment, and retaliation investigations;

c.      Types of preventative and corrective actions in discrimination, harassment, and retaliation investigations;

d.      How past complaints, allegations, or investigations of harassment or discrimination of a similar nature and involving the same individual alleged to have committed harassment or discrimination must be considered highly relevant evidence in the pending inquiry;

e.      That Defendant's personnel are required to research whether past complaints or investigations exist by reviewing complaint and disciplinary records;

  f.  That former employees may be sources of highly relevant evidence and should be contacted when appropriate;

  g.  The significance of corroborative testimonial evidence in a harassment investigation and the need to investigate whether such evidence exists, but that corroborative evidence is not required to make a finding that allegations of harassment or discrimination are substantiated or well-founded;

  h.  Techniques for witness credibility assessment, particularly, but not exclusively, for situations in which there is conflicting testimony and the absence of corroboration;

  i.  The need to thoroughly document harassment and discrimination complaint investigations, including taking and retaining notes of interviews conducted, fully documenting questions and answers, and complying with the provisions of Paragraph 36 of this Decree;

  j.  Investigative confidentiality;

  k.  Post-investigation procedures for monitoring the work environment, including, but not limited to, follow-up interviewing of employees; and

  l.  Procedures for monitoring and auditing any post-complaint or post-investigation personnel actions regarding complainants and witnesses to ensure no retaliation occurs.

**L.  MISCELLANEOUS PROVISIONS**

52.  Defendant agrees that it shall not offer to employ, nor employ Peter Pratt in any of its locations.

53.     Defendant shall prohibit Peter Pratt from entering the premises of any of its locations.  Defendant will instruct all employees above the rank of Crew Member that: (1) Peter Pratt is prohibited from entering the premises of any Coughlin location; and (2) that, if an employee above the rank of Crew Member is informed or becomes aware that Pratt is present in a Coughlin restaurant, that employee must ask Peter Pratt to leave the premises and take reasonable steps to ensure that he does, in fact, leave the premises.  A knowing violation of this provision by a supervisor or manager shall constitute grounds for that supervisor or manager's immediate termination.

## M.     RECORDKEEPING AND REPORTING

54.     The EEOC and State of Vermont may review Defendant's compliance with the provisions of this Decree.  As part of its review, the EEOC and State of Vermont may inspect Defendant's facilities, interview employees, and examine and copy documents.  Defendant will make all employees available to the EEOC and State of Vermont and shall permit employees to speak confidentially with the EEOC and State of Vermont for the purposes of verifying compliance with this Decree.  The EEOC shall give Defendant reasonable notice of its intent to inspect Defendant's facilities, interview employees, and examine and copy documents.

55.     For the duration of this Decree, Defendant must create and maintain such records as are necessary to demonstrate its compliance with this Decree and with 29 C.F.R. § 1602 *et seq.*

56.     At the conclusion of each four-month period for the duration of this Decree, the first occurring four (4) months following the Effective Date, Defendant shall submit to the EEOC and State of Vermont a Report signed by Charles Coughlin or any then owner or Chief Executive Officer/President under the penalties of perjury as set forth in 28 U.S.C. § 1746.

However, the final Report, which would otherwise be due on the five-year anniversary of the Effective Date, will be due ninety (90) days prior to the fifth anniversary of the Effective Date. The Report shall certify compliance with this Decree and contain:

      a.      A certification of compliance with the Notice and Posting requirements described in Section D, with a photograph of the posted materials in Defendant's locations;

      b.      A current copy of Defendant's Anti-Discrimination Policy as described in Paragraph 34, and policy regarding the documentation of complaints and investigations described in Paragraph 36;

      c.      A list of all management or supervisory personnel with responsibility for enforcing Defendant's Anti-Discrimination Policy, including name, title, and date of hire;

      d.      Where conducted in the prior four (4) months, a summary of all trainings provided pursuant to Section H, including (i) a certification that such trainings were provided; (ii) the date and location of each training; (iii) a statement indicating the manner of training, the length of the training, the name and contact information of the individual(s) providing the training, and the names and positions of all attendees; and (iv) copies of all handouts, PowerPoint or similar presentations, and any outlines utilized by presenters during the trainings;

      e.      A summary of all charges, complaints, or reports of sex discrimination and/or retaliation received by Defendant in the prior four (4) months that contain the information detailed in Paragraph 36;

f.    The complete investigative file as described in Paragraph 36 for all

investigation concluded in the prior four (4) months; and

g.    The Monitor's statement described in Paragraph 44(g).

**N.    DECREE COMMUNICATIONS**

57.    Except as otherwise provided for in this Decree, all notifications, reports, or other

communications to the Parties pursuant to this Decree shall be made in writing and sufficient as

emailed (or, with advance written permission, mailed) to the following persons (or their

designated successors):

For the EEOC:              Consent Decree Monitor
                           EEOC Legal Unit
                           33 Whitehall Street, 5th Floor
                           New York, NY 10004
                           Decreemonitor.nydo@eeoc.gov

                           and

                           Cara B. Chomski
                           Trial Attorney
                           U.S. EQUAL EMPLOYMENT
                           OPPORTUNITY COMMISSION
                           New York District Office
                           33 Whitehall Street, 5th Floor
                           New York, NY 10004
                           cara.chomski@eeoc.gov


For State of Vermont:      Emily Chamberlain Adams
                           Assistant Attorney General, Civil Rights Unit
                           Vermont Office of the Attorney General
                           109 State Street
                           Montpelier, VT 05609
                           Emily.adams@vermont.gov

For Defendant:             Charles Coughlin
                           Chief Executive Officer
                           Coughlin, Inc.
                           182 South Main St.
                           Rutland, VT 05701

charles.coughlin@partners.mcd.com

Notwithstanding this paragraph, the parties may change such addresses or identify a different designee by written notice to the other party setting forth a new address for this purpose or identifying a different designee without Order of the Court or approval of the other party.

**O.      DISPUTE RESOLUTION**

58.      In the event that the EEOC or State of Vermont believes that Defendant has failed to comply with any provision(s) of the Decree, the EEOC or State of Vermont will notify Defendant and it must make a good faith attempt to cure any breach of the Decree within fifteen (15) days of notification.

59.      Following the fifteen (15) days to cure period, if the EEOC or State of Vermont still believes that Defendant has failed to comply with the provision(s) of the Decree identified, the EEOC or State of Vermont shall have the right to seek Court intervention.

60.      Upon motion of the EEOC or State of Vermont, this Court may schedule a hearing for the purpose of reviewing compliance with this Consent Decree.

**P.      COSTS**

61.      Each party to this Decree shall bear its own attorneys' fees and costs associated with this litigation.

**Q.      NOTIFICATION OF SUCCESSORS**

62.      Defendant shall provide prior written notice to any potential purchaser of its business or a purchaser of all or a portion of Defendant's assets, and to any other potential successor, of this lawsuit, the allegations raised in the EEOC's Complaint and the State of Vermont's Intervenor Complaint, and the existence and contents of this Decree.  Defendant will provide written notice to the EEOC and State of Vermont twenty-one (21) days before any transfer of its business.

**R.      EXECUTION**

63.      Each signatory to this Decree represents that he or she is fully authorized to execute this Decree and to bind the parties on whose behalf he or she signs.  By signing this Decree, each party acknowledges that it has read and understands the terms of this Decree, and agrees to be bound by the terms of this Decree.

**S.      DURATION OF DECREE**

64.      The duration of the Decree shall be in effect for a period of five (5) years immediately following the Court's execution of this Decree.

65.      If the EEOC or State of Vermont have notified Defendant in writing not less than thirty (30) days before the expiration of this Decree that Defendant is not in compliance with any of the terms of this Decree, Defendant's obligations under this Decree will not expire while any enforcement action concerning this Decree is pending.

66.      The Court retains jurisdiction over this action during the duration of this Decree and will have all available powers to enforce this Decree, including but not limited to monetary sanctions and injunctive relief.  The matter may be administratively closed but will not be dismissed during the duration of this Decree.

67.     Defendant will not attempt to condition the receipt of individual relief upon an

individual's agreement to: (a) maintain as confidential the terms of this Consent Decree; or (b)

waive her statutory right to file a charge with any federal or state anti-discrimination agency.

**SO ORDERED, ADJUDGED, AND DECREED**

Dated: <u>June 30, 2022</u>                          <u>/s/ William K. Sessions III</u>
                                                     U.S. District Court Judge


**FOR PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

<u>JEFFREY BURSTEIN</u>
Regional Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
jeffrey.burstein@eeoc.gov
Office:  (212) 336-3770

CARA B. CHOMSKI
Trial Attorney
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
cara.chomski@eeoc.gov
(929) 506-5275


JUDGMENT ENTERED ON DOCKET
DATE: <u>July 1, 2022</u>

31

**FOR PLAINTIFF-INTERVENOR STATE OF VERMONT**

> **STATE OF VERMONT**
> **OFFICE OF THE ATTORNEY**
> **GENERAL**
>
> By: _____
> EMILY CHAMBERLAIN ADAMS
> Assistant Attorney General
> JULIO A. THOMPSON
> Director, Civil Rights Unit
> Vermont Office of the Attorney General
> 109 State Street
> Montpelier, VT 05609
> emily.adams@vermont.gov
> julio.thompson@vermont.gov
> (802) 498-8631

**FOR DEFENDANT COUGHLIN, INC.**

> _____
> CHARLES COUGHLIN
> Chief Executive Officer
> Coughlin, Inc.
> 182 South Main St.
> Rutland, VT 05701
> charles.coughlin@partners.mcd.com
> (802) 236-3866

**COUNSEL FOR DEFENDANT COUGHLIN, INC. (as to form only)**

> _____
> KAREN MCANDREW
> KENDALL HOECHST
> Dinse P.C.
> 209 Battery Street
> Burlington, VT  05401
> (802) 864-5751
> kmcandrew@dinse.com
> khoechst@dinse.com